UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ATEET KOSARAJU,

                 Plaintiff,                                 Case No.:7:17-cv-00383

-against-                                       **COMPLAINT**


MATTHEW BRIAN GORDON, E3 INVESTMENT
GROUP, LLC, and E3 INVESTMENT GROUP 51,
LLC.,

                 Defendants.
----------------------------------------------------------x


       Plaintiff Ateet Kosaraju ("**Ateet**") complaining of the defendants Matthew Brian

Gordon ("**Gordon**"), E3 Investment Group, LLC ("**E3**") and E3 Investment Group 51,

LLC ("**E351**" and E3, collectively, the "**Corporate Defendants**" the Corporate

Defendants together with Gordon are referred to hereinafter sometimes collectively as the

"**Defendants**") by his attorneys Gleason & Koatz, LLP, states:

## INTRODUCTION

      1.     This action details a fraudulent scheme in which Gordon, a New York

attorney, together with the Corporate Defendants exploited the "U.S. Citizenship and

Immigration Service's EB-5 Immigrant Investor Program" (the "EB-5 Program") to

defraud Ateet[1], an Indian citizen and a resident of New York of over $555,000.00.

      2.     Gordon lured Ateet into investing $500,000.00 (the "**Investment**") - with

an additional $55,000.00 paid directly to Gordon as fees - in a phony trucking scheme

with the false promise that Ateet would (a) obtain lawful residency status in the United

---

[1] And potentially other investors

States, (b) earn up to 6% return on the Investment, and (c) own and co-manage the trucking business that would own 10 trucks and employ 10 drivers (which would ostensibly satisfy the EB-5 Program).

3.      Ateet invested $500,000.00, paid Gordon $55,000.00 in fees, but got nothing in return except deceit, disappointment and dirty-dealing.

4.      Through incomplete and faulty disclosure, deceitful offering documents (the "**Offering Documents**"), and fraudulent conduct, Gordon diverted the Investment from Ateet's "trucking business" to his own pocket and stripped it of its assets.

5.      Rule 10b-5, promulgated by the U.S. Securities and Exchange Commission ("**SEC**") under Section 10(b) of the Securities Exchange Act of 1934 ("**Exchange Act**"), prohibits fraudulent conduct in connection with the purchase or sale of securities. (See 15 U.S.C. § 78j).

6.      The EB-5 investment that Gordon promised Ateet constitutes "securities" as defined by the Securities Act of 1933 (the "**Securities Act**").

7.      Rule 10b-5 makes it unlawful for any person, directly or indirectly, to:

    a.  employ any device, scheme, or artifice to defraud,

    b.  make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    c.  engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.

8.      Gordon, with the intent to defraud Ateet, misrepresented to Ateet material facts concerning the Investment. Gordon promised Ateet a direct, exclusive, and first priority interest in 10 trucks within Ateet's limited partnership. This was false since Gordon, as the alter ego of the general partner in Ateet's limited partnership, wrongfully and contrary to the partnership agreement and Offering Documents, transferred the ownership of the trucks to another entity, which Gordon solely owned and controlled.

9.      In addition, Gordon, intending to defraud Ateet, failed to fully, completely and adequately disclose to Ateet the risks involved in the Investment. The Offering Documents that Gordon presented to Ateet are devoid of any mention, either directly or indirectly, that Ateet's trucking business could be stripped of its assets or that Gordon could deprive Ateet of ownership of the business's assets.

10.     These misrepresentations and omissions are material facts on which Ateet relied to make the Investment.

11.     As a result of Ateet's reliance on Gordon's misrepresentations, Ateet was damaged in an amount not less than $555,000.00.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to Sections 28 U.S.C. §1331, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

13.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391, and 15 U.S.C. §78aa. This Court has personal jurisdiction over Defendants, and venue is proper in the Southern District of New York, because: (a) Gordon, who controls the Corporate Defendants, is a resident of  Westchester County, New York, with an address at 51 Warren Street, Hastings on Hudson, New York 10706-3945, and all other defendants are

residents of the State of New York, (b) the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred within the jurisdiction of the Southern District of New York, and (c) each of the Corporate Defendants is located within New York. Gordon and the Corporate Defendants are subject to the jurisdiction of this Court.

## THE PARTIES

14.    Ateet is a citizen of the Republic of India and a resident of the state of New York with an address at 12-15 Broadway, Apartment number 515, Astoria, New York 11106.

15.    Gordon is a citizen and resident of the State of New York with an address at 51 Warren Street, Hastings on Hudson, New York 10706-3945.

16.    E3 is a Delaware limited liability company, with its, and its partners', principal place of business and partners at 10 East 39th Street, 12th Floor, New York, New York 10016.

17.    E351 is a Delaware limited liability company, with its, and its members', principal place of business at 51 Warren Street, Hastings on Hudson, New York 10706-3945.

## RELEVANT NON-PARTIES

18.    E3 Cargo 51, LP ("**E3 Cargo51**") is a Delaware limited partnership created pursuant to that certain Amended and Restated Agreement of Limited Partnership (the "**Amended LPA**") dated as of November 11, 2015, by and between E351, as General Partner, and Ateet, as a limited partner.

19.    E3 Cargo51 is wholly operated and controlled by Gordon.

20.     E3 Investment Group 2, LLC ("**E3IG2**") is a Delaware limited liability company and a limited partner of E3 Cargo51.

21.     E3IG2 is wholly owned, operated and controlled by Gordon and E3.

22.     RedIndian Group (d/b/a EB-5 India) and its principal Virkam Reddy ("Mr. Reddy") is the agent of E3IG in India[2].

## **THE FRADULENT SCHEME**

23.     Gordon and the Corporate Defendants that Gordon controlled orchestrated a fraudulent scheme to defraud Ateet, the limited partner in E3 Cargo51.

24.     Gordon used the EB-5 Program to entice Ateet to invest $500,000.00 in Gordon's trucking scheme and pay Gordon $55,000.00 in fees.

25.     The EB-5 Program, which is administered nationally by the U.S. Citizenship and Immigration Services, provides a method for an alien to obtain lawful permanent residence in the United States (a "Green Card"). Under the EB-5 Program, alien investors who invest capital in a "commercial enterprise" in the United States may petition the USCIS (via an "I-526 Petition") and receive conditional permanent residency status for a two-year period.

26.     The EB-5 Program requires a showing that the foreign investor has placed the required amount of capital at risk for "the purpose of generating a return" on the capital. The foreign investor must invest at least $500,000 in a "Targeted Employment Area" and create at least ten fulltime jobs for United States workers. If the foreign investor satisfies these and other conditions within the two-year period, the foreign investor may apply to have the conditions removed from his or her visa and live and work

---

[2] http://www.eb5india.in/

in the United States permanently. Moreover, if the project is successful, investors will be entitled to returns on their investment as set forth in the Offering Documents.

27.     In 2015, Gordon made material misrepresentations and omissions to Ateet in order to persuade him to invest $500,000.00 and pay Gordon $55,000.00.

28.     Gordon misrepresented to Ateet that the Investment would fund E3 Cargo51, the partnership to be owned by Ateet as a limited partner and E3 as the General Partner, and that the Investment would purchase 10 trucks and employ 10 drivers.

29.     According to the Offering Documents, E3 as the General Partner would manage E3 Cargo51, and other limited partnerships that were owned by other investors. This, Gordon claimed, would allow the General Partner to manage many limited partnerships and lower the operating costs and expenses, supposedly generating 6% return on Ateet's Investment.

30.     After delivering to Gordon $555,000.00, Ateet uncovered that the Investment was a scam because Gordon did not fund E3 Cargo51 with Ateet's Investment, E3 Cargo51 did not own a single truck, and E3 Cargo51 had no employees. Gordon admitted to Ateet that E3 Cargo51 did not own any trucks and that its only asset was "accounts receivable".[3]

## THE INVESTMENT

31.     In April, 2015, Gordon solicited the Investment from Ateet in India through Gordon's agent Mr. Reddy.

32.     Mr. Reddy is the principal of RedIndian, and is Gordon's agent in India.

---

[3] September 6, 2016 email from Gordon to Ateet's counsel

6

33.     RedIndian, as Gordon's agent, delivered to Ateet and his father, Dr. Joyti Kosaraju ("Dr. Jyoti") the Offering Documents relating to the EB-5 Program and the Investment.

34.     One of the Offering Documents, which Gordon denominated the "EB-5 Immigrant Visa Investment Program", promised: (i) "Invest $500,000, Get Green Card", (ii) "Legally OWN Property", (iii) "Access to COURT System", "Many SOCIAL WELFARE Benefits", and "Social security Benefits"…etc.[4] (capitals in original).

35.     Ateet was then a medical graduate from India. He came to the United States to prepare for the United States Medical Licensing Exam (USMLE) in order to pursue his medical residency in United States. The son of a medical doctor, Ateet's aspiration was to practice medicine in the United States.

36.     Gordon[5] and RedIndian misrepresented to Ateet these material facts: (i) the Investment was secured because E3 Cargo51 would directly and exclusively own a fleet of trucks, (ii) the return on the Investment (up to 6%) would provide Ateet with a stream of income, and (iii) the Investment would qualify Ateet to receive permanent residency in the United States as an investor in the EB-5 Program.

37.     Ateet did not have available $500,000.00 and his father gave the funds to Ateet.

38.     Gordon falsely and misleadingly promised that Ateet's Investment in E3 Cargo51 would fund the purchase of 10 trucks and employ 10 drivers. According to Gordon and the Offering Documents, although Ateet would have complied with the EB-5

---

[4] RedIndian Ad
[5] Through telephone calls to Ateet and Dr. Jyoti.

Program because his Investment was without recourse, the Investment would still be secured because E3 Cargo51 would directly and exclusively own the trucks.

39.     Dr. Jyoti mortgaged the family home and gave Ateet $500,000.00 to enable Ateet to invest with Gordon.

40.     On May 20, 2015 Ateet signed the Limited Partnership Agreement (the "**LPA**"), as a limited partner, and Gordon signed on behalf of E351 as the general partner (the "**General Partner**").

41.     On June 24, 2015 Ateet delivered $500,000.00 to Gordon by making two separate $250,000.00 wire transfers to an escrow account setup by Gordon.

42.     In addition, Ateet paid Gordon $55,000.00 as an alleged "legal review", "formation fee" and "administrative fee".

43.     Ateet's total payments to Gordon amounted to $555,000.00.

44.     In August 14, 2015 Gordon travelled to India and met with Dr. Joyti in connection with advancing the mechanism to carry out the Investment.

45.     On November 11, 2015, Gordon fraudulently induced Ateet to execute the Amended LPA to allegedly enable Ateet to receive income from his Investment pending adjudication of his I-526 Petition.

46.     Pursuant to Section 4.1 of the Amended LPA, Ateet was supposed to receive income of $2,500.00 per month from the Investment (the "**Distribution**").

47.     On November 28, 2015 Ateet sent an email to Gordon demanding the Distribution.

48.    Instead of making the promised Distribution, Gordon asked Ateet to provide him with a United States social security number ("**SSN**") knowing full well that Ateet, an alien and citizen of India, would not have a United States SSN.

49.    Gordon wrongfully claimed that because Ateet lacked a SSN, Gordon could not make the Distribution.

50.    On December 3, 2015, Ateet applied for a Tax Identification Number ("**TIN**"), a process that takes between 7 to 11 weeks to be completed.

51.    On December 5, 2015, and December 6, 2015, Ateet asked Gordon again to pay the Distribution. Gordon demanded, falsely, that Ateet first sign a loan agreement in order to get paid.

52.    Gordon's demand proceeded from a false predicate. None of the Offering Documents or the partnership agreement conditioned Distribution on a loan agreement.

53.    Ateet, having no other choice, signed the loan agreement.

54.    Thereafter, Gordon made a few payments to Ateet but promptly stopped.

55.    On March 26, 2016, Ateet wrote to Gordon demanding he disclose the status of the monthly Distribution. On April 8, 2016 Ateet emailed Gordon again demanding the same information. Gordon's reply: "sorry for the delay. The accountant simply forgot." Gordon then sent one payment, but stopped making additional payments thereafter.

56.    Pursuant to the LPA and the Amended LPA, Gordon was obligated to send to Ateet "[w]ithin 120 days after the end of each fiscal year,… [Ateet] financial statements of the Partnership".

57.     Gordon failed to provide Ateet with the required financial statements and repeatedly failed to make timely payment of Distributions.

58.     Because of Gordon's fraudulent conduct, Ateet decided, in April 2016, to pursue his lawful residency application in the United States through his employer and withdraw the I-526 Petition.

59.     Ateet demanded that Gordon return this Investment and identify each of the trucks that he owned.

60.     Gordon refused to return the Investment. He said that Ateet was no longer an investor and that his investment was "converted into debt" since he withdrew the I-526 Petition.

61.     On September 6, 2016, Gordon admitted to Ateet, via an email to Ateet's counsel, that E3 Cargo51 did not own any trucks but "[t]he chief asset is accounts receivable". This was contrary to Gordon's earlier representations to Ateet that Ateet would directly and exclusively own the trucks.

62.     Gordon claimed, in violation of the Offering Documents and the LPA, that the trucks owned by E3 Cargo51 had been transferred from its "books" and pooled together with other partnerships.

63.     Despite Ateet's demands that Gordon provide financial accounting concerning E3 Cargo51, Gordon failed and refused to provide Ateet with financial statements, claiming that "our structure has a lot of intracompany transactions, so it can be a bit tricky. The accounting group did not book certain things correctly".

64.     When Ateet asked Gordon again for the return of his Investment, Gordon encouraged Ateet and Dr. Jyoti to bring in other investors to invest in Gordon's scheme to "create additional cash flow, from which we could pay Ateet".

65.     Gordon's conduct clearly manifests an intent to defraud Ateet.

## THE OFFERING MATERIALS

66.     To induce Ateet to invest in his fraudulent scheme, Gordon presented Ateet with Offering Documents, which included an E3 Business Plan (the "**Business Plan**"), RedIndian Pitch Book, E3 Pitch Book, Agreement of Limited Partnership, Amended and Restated Agreement of Limited Partnership, escrow agreement, and an insurance policy.

67.     The Offering Documents constitute false and materially misleading statements regarding the Investment.

68.     The Offering Documents failed to adequately and completely disclose to Ateet the risks of the Investment as required by the Securities Act. Such disclosure is material to Ateet's Investment and required by the Securities Act.

### A.  **"It's Your Trucking Company – No Pooling with Other Investors"**[6]

69.     The Offering Documents represent how Ateet's Investment was supposed to function: "Each limited partner investor's …. capital will fund its own separate and distinct limited partnership entity, which will be co-managed and run by [E3]". This representation is false because Gordon never funded E3 Cargo51 with Ateet's Investment.

---

[6] E3IG Business Plan Cover Page

70.     Gordon falsely claimed in the Offering Documents that Ateet would own directly a trucking company and that his investment would not be pooled with other investors. This was false. Gordon claimed that the reason he could not refund Ateet's Investment was because "all the trucks [were pooled] by a central entity"[7]. That is, Ateet's Investment in 10 trucks had been grouped together in the same pool as other investors were in and E3 Cargo51 did not own any assets, but rather it owned contrary to Gordon's representations in the Offering Documents merely "accounts receivable".

71.     Gordon's claim contradicts the representations in the Offering Documents. "The Partnership will be the owner of the ten Class-8 trucks financed with the Limited Partner's $500,000 of investment capital." [8]

72.     The Business Plan delivered by Gordon to Ateet clearly shows that E3 Cargo51 was supposed to own its own trucks. The Diagram below, part of the Offering Documents sets forth Ateet's ownership.

73.     The second box on the right side of the diagram shows that Ateet's Limited Partnership "owns the truck assets". Gordon materially misrepresented this since E3 Cargo51 never owned such assets.


[Remainder of page intentionally left blank]

---

[7] August 21, 2016 email from Gordon
[8] E3IG Business Plan p.33



74.     Ateet's entire Investment in E3 Cargo51 was a sham because E3 Cargo51 owned no assets, no trucks, and employed no one.

75.     By diverting Ateet's funds to different partnerships, Defendants materially misled Ateet who believed, as the Offering Documents represented, his Investment would be used solely to fund E3 Cargo51, provide the returns, and create the requisite jobs.

76.     Gordon knowingly, recklessly and negligently engaged in a fraudulent scheme by misappropriating the Investment, so that most if not all of these funds have not been used as represented in the Offering Documents and other disclosures to Ateet.

77.     Gordon knew that Ateet invested in E3 Cargo51 so that E3 Cargo51 would own its own trucks and assets and qualify Ateet for the Green Card.

78.     Not only did Gordon oust Ateet from managing the Investment, Gordon told Ateet that he was no longer an investor. Gordon alleged Ateet was a mere creditor of a partnership that owns no assets. This was not the risk Ateet signed up for when he made the Investment.

79.     The Offering Documents were materially misleading. Gordon controlled and solely managed all the Defendant entities and E3 Cargo51 and diverted their assets.

80.     Gordon, the alter ego of E3, solely controlled the Corporate Defendants, and exercised sole authority over the Corporate Defendants.

**B.    "Investors will have an unparalleled level of transparency into the status of their investments".**

81.     Gordon represented falsely to Ateet that "Investors will have an unparalleled level of transparency into the status of their investments".

82.     This representation was false. Gordon failed to deliver to Ateet any financial accounting concerning his Investment for over two years. Instead, Gordon repeatedly told Ateet to wait.

83.     Gordon made misleading and false statements to Ateet:

a.     "E3 Cargo will implement a web-portal, which will ultimately allow limited partner investors to see current financial information on their partnership entity and even the location of all trucks on a real-time basis."[9] No web-portal was ever created.

b.     "The books and records of the Partnership will be maintained at the principal office of the Partnership and will be available for examination there by any Partner or any Partner's duly authorized

---

[9] Pitch Book P.6

representatives at all reasonable times "... "The Partnership will maintain books and records in such a way that they, in the reasonable opinion of the General Partner, fairly represent the results of the Partnership." …"Within 75 days after the end of each calendar year, the General Partner will send to each Person who was a Limited Partner at any time during the fiscal year ending during that calendar year such tax information as is necessary for the preparation by the Limited Partner of his, her or its Federal income tax return, and required state income and other tax returns with regard to jurisdictions in which the partnership is formed or qualified." … "Within 120 days after the end of each fiscal year, the General Partner will send to each Person who was a Limited Partner at any time during the fiscal year financial statements of the Partnership." Gordon failed to give Ateet any financial statements or accounting.

84.    Gordon neither prepared nor provided financial reports to Ateet.

85.    Gordon's representations were false and materially misleading because Gordon failed and refused to provide Ateet with any financial accounting or other relevant documents.

86.    Gordon failed and refused to provide Ateet with a list of assets owned by E3 Cargo51 claiming that the 2015 financial statements concerning E3 Cargo51 were still being audited.

87.     In August, September, and October 2016, Ateet's counsel demanded from Gordon a list of assets owned by E3 Cargo51 and financial statements concerning Ateet's Investment.

88.     Gordon failed and refused to provide counsel with the requested documents.

### C.   False Statements Regarding Ateet's Active Involvement in the Investment.

89.     The EB-5 Program requires the immigrant investor to "be engaged in the management of the new commercial enterprise, either through the exercise of day-to-day managerial control or through policy formulation, as opposed to maintaining a purely passive role in regard to the investment."

90.     In order to comply with this requirement, the Offering Documents repeatedly represented to Ateet that he would be permitted to participate in policy decisions and "co-manage the limited partnership".

91.     These representations were false. Gordon held not a single meeting with Ateet, nor did Gordon allow Ateet to participate in managing E3 Cargo51.

### D.   Gordon's Ongoing Conduct and Explanation

92.     In August 2016[10], Gordon admitted that the Investment was not used to fund E3 Cargo51. Gordon had instead diverted Ateet's Investment, claiming that, "While it was a nice idea to have each partnership maintain the trucks on its own books, it has created significant accounting and operational issues as sometimes we need different partnership to operate different trucks".[11]

---

[10] In an email Gordon sent to Ateet's attorney.
[11] August 21, 2016 email from Gordon.

93.    Gordon acted with intent to defraud Ateet. This is clear from Gordon's discussions with Ateet and Dr. Jyoti when Ateet requested return of his Investment. Gordon encouraged Dr. Jyoti to recruit other investors so Gordon could use the investments from the new investors to pay back Ateet.

## FIRST CLAIM FOR RELIEF

## Fraud in Connection with the Purchase or Sale of Securities Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and 10b-5(c) Thereunder

94.    Plaintiff realleges and incorporates by reference paragraphs 1 through 93 above.

95.    By engaging in the conduct described above, each Defendant, directly or indirectly, in connection with the purchase or sale of a security: (a) employed devices, schemes, or artifices to defraud; and (b) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

96.    Each Defendant knew, or was reckless in not knowing, that he, or it employed devices, schemes and artifices to defraud; and engaged in acts, practices or courses of conduct that operated as a fraud on Ateet by the conduct described in detail above.

## SECOND CLAIM FOR RELIEF

## CONVERSION

97.    Plaintiff realleges and incorporates by reference paragraphs 1 through 96 above.

98.    Gordon caused the transfer of over half a million dollars from Ateet to E3 Cargo51, which Gordon wholly controls, for the benefit of Gordon. Gordon misued and

converted the Investment to his own benefit and stripped E3 Cargo51 of its assets for his own use.

99.     By virtue of these wrongful acts, Gordon converted the property of E3 Cargo51 to his own use or the use of entities under his control.

100.     In this way Gordon exercised sole control and dominion over the assets of E3 Cargo51 and appropriated it for his own use and beneficial enjoyment.

101.     As a result of such wrongful conversion, Ateet suffered damages in an amount to be determined at trial, but no less than $555,000.00.

## THIRD CLAIM FOR RELIEF

## BREACH OF CONTRACT
## (LIMITED PARTNERSHIP AGREEMENTS)

102.     Plaintiff realleges and incorporates by reference paragraphs 1 through 101 above.

103.     Gordon and the Corporate Defendants signed the LPA and Amended LPA and controlled E3 Cargo51.

104.     The LPA and Amended LPA must be read in conjunction with the implied covenant of good faith and fair dealing.

105.     Gordon caused the Corporate Defendants and E3 Cargo51 to violate various terms of LPA and Amended LPA, including but not limited to the holding and use of the E3 Cargo51 funds.

106.     As a result of these breaches of the LPA and Amended LPA and covenant of good faith and fair dealings, Ateet suffered damages.

## FOURTH CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY

107.     Plaintiff realleges and incorporates by reference paragraphs 1 through 106 above.

108.     Gordon owed a fiduciary duty of care and loyalty to each of E3 Cargo51 and Ateet, by virtue of his roles as manager and his control over the general partner of E3 Cargo51.

109.     The duty of care owed by Gordon to E3 Cargo51 and Ateet was to refrain from engaging in negligent or reckless conduct, intentional misconduct and knowing violations of the law.

110.     The duty of loyalty owed by Gordon to E3 Cargo51 and Ateet included the duties: (1) to account to Ateet and hold as trustee for him any property, profit, or benefit derived by E3 Cargo51 and Gordon in the conduct of E3 Cargo51 business or derived from a use by Gordon of E3 Cargo51property.

## <u>FIFTH CLAIM FOR RELIEF</u>

## UNJUST ENRICHMENT

111.     Plaintiff realleges and incorporates by reference paragraphs 1 through 110 above.

112.     Gordon solicited Ateet to invest $500,000.00.

113.     Gordon caused E3 Cargo51, in turn, to transfer its assets to other entities in which Ateet owns no ownership interest.

114.     Ateet did not authorize or approve such transfers which were not disclosed in the Offering Documents and were thereby fraudulent.

115.   It would be inequitable for Gordon not to compensate Ateet for the value of those transfers.

116.   Ateet also paid Gordon $55,000.00 in fees.

117.   Gordon knew that the services for which he received payment from Ateet were in violation of the Offering Documents.

118.   It would be inequitable for Gordon not to compensate Ateet for the payment he received.

119.   For these reasons, Gordon has been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Ateet seeks judgment in his favor and against Gordon and the Corporate Defendants jointly and severally as follows:

(a) an order declaring the LPA and Amended LPA null and void ab initio;

(b)  compensatory, exemplary, punitive and statutory penalties and damages, including interest, in an amount to be proven at trial but not less than $555,000.00;

(c) an award of attorneys' fees and costs, as allowed by law;

(d) an order directing Defendants to disgorge all funds received from their illegal conduct together with an award of pre-judgment and post-judgment interest, as provided by law;

(e) leave to amend this Complaint to conform to the evidence produced at trial; and

(f)  such other relief as may be appropriate under the circumstances.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands

that this case be tried to a jury.

Dated: New York, New York
         January 19, 2017

                                    Gleason & Koatz, LLP

                                    By: /s/ Kal Qubain
                                         Kal Qubain

                                    122 East 42nd Street
                                    New York, New York 10168
                                    (212) 986-1544
                                    *Attorneys for plaintiff Ateet Kosaraju*