USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/15/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ATEET KOSARAJU,

                Plaintiff,

-against-

MATTHEW BRIAN GORDON, E3 INVESTMENT GROUP, LLC, and E3 INVESTMENT GROUP 51, LLC,

                Defendants.

No. 17-CV-00383 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Ateet Kosaraju ("Ateet") brings this action against Defendants E3 Investment Group, LLC, E3 Investment Group 51, LLC (collectively, the "Corporate Defendants") and Matthew Brian Gordon (collectively, the "Defendants") alleging that Defendants exploited the U.S. Citizenship and Immigration Service's EB-5 Immigrant Investor Program and engaged in a scheme to defraud him of over $555,000.00.

Presently before the Court is Defendants' motion to stay Plaintiff's claims and compel arbitration under the Federal Arbitration Act ("FAA") or, in the alternative, dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion to stay Plaintiff's claims and compel arbitration is GRANTED.

## BACKGROUND

In November of 2015, Plaintiff, a citizen of the Republic of India, entered into a Partnership Agreement with Defendant Gordon.[1] (Decl. of Ateet Kosaraju in Opp. to Defs.' Mot.

---

[1] Plaintiff alleges that the November Agreement was preceded by an initial Limited Partnership Agreement. (Am. Compl. ¶ 4.) However, neither party appears to contest that the former is the operative agreement. (*See* Mem. of Law in Supp. of Defs.' Mot. to Stay Pl.'s Claims and Compel

to Stay Pl.'s Claims and Compel Arbitration, or, in the Alternative, to Dismiss the Am. Compl. ("Ateet Decl.") ¶ 22, ECF No. 35.) Defendant Gordon allegedly represented to Plaintiff, a recent graduate of medical school in India, that the Partnership Agreement would allow him to apply for conditional lawful permanent residence in the United States. (Am. Compl. ¶¶ 1–4; Ateet Decl. ¶ 6–9.) Specifically, Defendant Gordon represented that the Partnership Agreement would structure an investment by Plaintiff to ensure his eligibility for a visa under the fifth immigration preference enumerated in 8 U.S.C. § 1153(b)(5)[2] and provide Plaintiff a 6% return on that investment. (Ateet Decl. ¶ 9.) Relying on Defendant Gordon's alleged representations, Plaintiff entered into the Partnership Agreement and delivered a $500,000.00 investment, along with $55,000.00 in fees to Defendant Gordon. (*Id.* ¶¶ 13–17, 22.)

In addition to outlining the contours of Plaintiff's investment, the Partnership Agreement contained a "Dispute Resolution" provision providing that:

> "[a]ny controversy or claim arising out of or relating to this Agreement, the services performed hereunder, or the breach thereof shall be submitted to and settled by arbitration before the American Arbitration Association ("AAA") in Manhattan, New York, in accordance with the Commercial Arbitration Rules of the AAA."

(Decl. of Richard J.L. Lomuscio in Supp. Of Defs.' Mot. to Stay Pl.'s Claims and Compel Arbitration, or, in the Alternative, to Dismiss the Am. Compl. ("Lomuscio Decl."), Ex. A, Am. and Restated Agreement of Limited Partnership, at 22, ECF No. 33.)

Despite the arbitration provision in the Partnership Agreement, Plaintiff commenced the

---

Arbitration, or, in the Alternative, to Dismiss the Am. Compl. ("Defs.' Mot.") at 1; Am. Compl. ¶ 4.)

[2] More commonly referred to as the "EB-5 Program," this provision allows immigrant entrepreneurs to qualify for lawful permanent residence in the U.S. if they make a minimum investment of $500,000 in a "targeted employment area" and create a minimum of ten full-time employment positions. 8 U.S.C. § 1153(b)(5).

2

instant action in federal court on January 19, 2017, alleging, *inter alia*, that Defendant made material misrepresentations to fraudulently secure Plaintiff's assent to the Partnership Agreement and payment of $555,000.00 in investments and fees. (Compl., ECF No.1; Am. Compl. ¶ 10, ECF No. 19.) Namely, Plaintiff contends that Defendant falsely represented that Plaintiff's investment would directly fund the purchase of ten trucks through a distinct limited liability partnership entity that Plaintiff would co-manage and run. (Ateet Decl. ¶ 13.) Instead, the limited liability company set up by Defendant Gordon, E3 Cargo 51, did not own any physical assets. (*Id.* ¶ 32.) Rather, Plaintiff's investment was allegedly pooled with those of other investors, leaving Plaintiff's limited partnership without any individual assets. (*Id.* ¶¶ 32, 41.) Plaintiff further claims that Defendant fraudulently induced him to enter the arbitration portion of the Agreement by claiming that Plaintiff would have "access to the Court System in the United States." (Ateet Decl. ¶¶ 13, 44.)

Defendants contend that Plaintiff's claims all fall under the ambit of the arbitration provision of the Partnership Agreement, and accordingly, move to stay the present action and compel arbitration. (Mem. of Law in Supp. of Defs.' Mot. to Stay Pl.'s Claims and Compel Arbitration, or, in the Alternative, to Dismiss the Am. Compl., ("Defs.' Mot.") at 1, ECF No. 32.) Defendants further contend that even if this Court declines to compel arbitration, Plaintiff's Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Id.*)

3

## DISCUSSION

I. **Motion to Compel Arbitration**

   A. **Applicable law**[3]

The Federal Arbitration Act (the "FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." *Nicosia v. Amazon, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (internal quotation marks omitted) (quoting 9 U.S.C. § 2). The FAA, as the Supreme Court has repeatedly instructed, thus "embod[ies] [a] national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (second alteration in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). "[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate disputes." *Nicosia*, 834 F.3d at 229 (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). The FAA, however, "does not require parties to arbitrate when they have not agreed to do so." *Id.* (internal quotation marks omitted).

Accordingly, the "question of arbitrability"—that is, whether the parties have agreed to arbitrate any particular claim—is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Id.* (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537

---

[3] Although the Partnership Agreement contains a choice-of-law provision that provides for the agreement to be "governed by and construed in accordance with the laws of the State of Delaware" (Lomuscio Decl., Ex. A, Am. and Restated Agreement of Limited Partnership, at 22), both parties have agreed that federal law applies to the federal claims in the present action and New York law applies to the common law claims. (Defs.' Mot. at 3 n.2). Further, "even when parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law." *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 323 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Cargill Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991). Because both parties only cite to federal and New York state law, the court will analyze the issues under the law of this State.

U.S. 79, 83 (2002)). "Whether a particular dispute is subject to arbitration turns on (1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *MidOil USA, LLC v. Astra Project Fin. Pty Ltd.*, No. 12-CV-8484 (PAC) (KNF), 2013 WL 4400825, at *2 (S.D.N.Y. Aug. 15, 2013) (internal quotation marks omitted), *aff'd,* 594 F. App'x 48 (2d Cir. 2015).

Such issues are typically raised, as here, in a motion to compel arbitration. *Nicosia*, 834 F.3d at 229. "In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment," which requires a court to "consider all relevant, admissible evidence submitted by the parties and contained in the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Id.* (internal quotations marks omitted) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). In reviewing such evidence, the Court "must draw all reasonable inferences in favor of the non-moving party." *Id.* "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Id.* (internal quotation marks omitted) (quoting *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011)).

**B. Analysis**

Plaintiff does not dispute that he signed the Partnership Agreement, which includes a broad arbitration clause that covers "[a]ny controversy or claim arising out of or relating to [that] Agreement." (Lomuscio Decl., Ex. A, Am. and Restated Agreement of Limited Partnership, at 22; Am. Compl. ¶¶ 46, 52.) Rather, Plaintiff maintains that Defendant Gordon fraudulently

5

induced him to enter into the Partnership Agreement and the arbitration clause contained therein, making them both *void ab intio*. (Pl.'s Mem. of Law in Opp. to Defs.' Mot. Seeking to Stay Pls.' Claims and Compel Arbitration ("Pl.'s Opp.") at 6, ECF No. 37.)

Defendants' contend, however, that the arbitration clause in the Partnership Agreement is valid and enforceable, and that Plaintiff's claims are subject to its provisions. (Defs.' Mot. at 1.) This Court agrees.

As a preliminary matter, this Court may adjudicate Plaintiff's fraud in the inducement claim as it relates specifically to the arbitration provision of the Partnership Agreement. *See MidOil USA*, 2013 WL 4400825, at *2 ("[C]ourts may adjudicate claims of fraudulent inducement that are directed towards the arbitration provision in particular—an issue which goes to the 'making' of the agreement to arbitrate . . . ." (internal quotation marks omitted)); *see also Buckeye Check Casliing, Inc.*, 546 U.S. at 445–46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator . . . .").

Plaintiff, however, fails to establish a claim for fraudulent inducement relating specifically to the arbitration clause. To prevail on a fraud claim under New York law, a plaintiff must show that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)).

Here, while Plaintiff enumerates many alleged misrepresentations on which he relied when entering the Partnership Agreement, a majority of those allegations relate to the contract generally and are not specific to the arbitration clause. (*See generally* Am. Compl.) Indeed, the

only alleged misrepresentation even vaguely connected to the issue of arbitration that Plaintiff identifies in the Complaint is a statement on the cover of the "Offering Documents" disseminated by Defendants that references "Access to Court System." (Am. Compl. ¶ 110; Decl. of Kal Qubain in Opp. to Defs.' Mot. Seeking to Stay Pl.'s Claims and Compel Arbitration ("Qubain Decl."), Ex. A, Offering Documents at 1, ECF No. 34.) The cover of the Offering Documents, however, does not purport to outline the contours of the Partnership Agreement or of Plaintiff's investment. Rather, the cover—which depicts an image of Uncle Sam and the phrase "Get a Green Card,"—lists the alleged benefits of being a green card holder, including: "more job opportunities," "social security benefits," the "right to vote," "tax benefits," and "access to court systems." (Qubain Decl., Ex. A at 1.) While perhaps overly simplistic and misleading, these representations do not relate specifically to the arbitration provision of the agreement. The representation that access to U.S. Courts is a general benefit of becoming a legal permanent resident of this country does not relay any information—or misinformation—about the method of dispute resolution contained in the Partnership Agreement. Plaintiff, thus, fails to identify any materially false representation made by Defendant Gordon relating specifically to the arbitration clause in the Complaint.

Further, though Plaintiff's affidavits make references to other vague statements from Defendant Gordon regarding "access to U.S. Courts" (Decl. of Joyti Prasad Kosaraju in Opp. to Defs.' Mot. ¶ 15, ECF No. 36.), Plaintiff nonetheless fails to establish the third element of a fraud claim—reasonable reliance. Indeed, federal courts in this district as well as New York state courts have found that where "the alleged misrepresentations conflict with the terms of the [agreement], there can be no reasonable reliance as a matter of law." *Passelaigue v. Getty Images (US), Inc.*, No. 16-CV-1362 (VSB), 2018 WL 1156011, at *4 (S.D.N.Y. Mar. 1, 2018) (internal

quotation marks omitted); *see also Jackson v. Broad. Music, Inc.*, No. 06-CV-2283, 2007 WL 2914516, at *1 (2d Cir. Oct. 5, 2007) (summ. order) (affirming the district court's determination that a plaintiff "could not reasonably have relied on [an] alleged . . . misrepresentation" where it contradicted "the clear language of the agreement at issue"); *Washington Capital Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 366 (S.D.N.Y. 2005) (rejecting a fraudulent inducement claim where the alleged misrepresentations "were plainly contradicted by the meaning of the written document that the claimant failed to read"); *Morby v. Di Siena Assocs. LPA*, 737 N.Y.S.2d 678, 680 (3d Dep't 2002) ("Having failed to read the release before signing it, plaintiff simply cannot establish the essential element of justifiable reliance . . . [T]he allegedly fraudulently misrepresentation . . . could have been readily discovered upon the reading of the document, and plaintiff cannot now avoid his obligations under a release he did not read merely by asserting that he "thought" it was something else." (internal citations omitted)); *Maines Paper & Good Serv. Inc. v. Adel*, 681 N.Y.S.2d 390, 391 (3rd Dep't 1998) (finding that an individual could not have justifiably relied on oral misrepresentations where he failed to read, or have someone else read and explain, the agreement that was otherwise unambiguous and clear); *Dunkin' Donuts of Am., Inc. v. Liberatore*, 526 N.Y.S.2d 141,143 (2d Dep't 1988) ("It has been uniformly held that if the facts represented are not matters peculiarly within the representor's knowledge, and the other party has the means available to him of knowing by the exercise of ordinary intelligence the truth or real quality of the subject of the representation, he must make use of those means or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.").

Here, the Partnership Agreement clearly contains a one-paragraph provision labeled "Dispute Resolution" delineating that "[a]ny controversy or claim arising out of or relating to

8

this Agreement, the services performed hereunder, or the breach thereof shall be submitted to and settled for arbitration before the American Arbitration Association (the "AAA") in Manhattan, New York." (Lomuscio Decl., Ex. A at 22.) Plaintiff, therefore, could not have justifiably relied on any statement implying that he would have "access" to the U.S. Court System to air his grievances when a clear reading of the Partnership Agreement would have told him otherwise. Plaintiff is not excused from his obligations to arbitrate merely because he failed to read the unambiguous arbitration provision included in the Partnership Agreement. The Court, therefore, finds the arbitration clause of the Partnership Agreement valid and enforceable.

Having found that a valid agreement to arbitrate exists, the only remaining issue is "whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *MidOil USA,* 2013 WL 4400825, at *2. "When considering whether claims fall within the scope of an arbitration clause," the Court must "analyze the factual allegations made in the plaintiff's complaint." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015). "If the allegations underlying the claims touch matters covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal label attached to them." *Id.* (internal quotation marks omitted).

Here, the factual core of Plaintiff's Complaint concerns Defendants' alleged fraud in obtaining Plaintiff's investment and assent to the Partnership Agreement. The Supreme Court has repeatedly held that while a court may adjudicate a claim for fraudulent inducement of the arbitration clause itself, a claim of fraudulent inducement of the entire contract is to be decided by the arbitrator rather than the court. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404 (1967); *Buckeye Check Casliing, Inc.*, 546 U.S. at 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by

this Agreement, the services performed hereunder, or the breach thereof shall be submitted to and settled for arbitration before the American Arbitration Association (the "AAA") in Manhattan, New York." (Lomuscio Decl., Ex. A at 22.) Plaintiff, therefore, could not have justifiably relied on any statement implying that he would have "access" to the U.S. Court System to air his grievances when a clear reading of the Partnership Agreement would have told him otherwise. Plaintiff is not excused from his obligations to arbitrate merely because he failed to read the unambiguous arbitration provision included in the Partnership Agreement. The Court, therefore, finds the arbitration clause of the Partnership Agreement valid and enforceable.

Having found that a valid agreement to arbitrate exists, the only remaining issue is "whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *MidOil USA,* 2013 WL 4400825, at *2. "When considering whether claims fall within the scope of an arbitration clause," the Court must "analyze the factual allegations made in the plaintiff's complaint." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015). "If the allegations underlying the claims touch matters covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal label attached to them." *Id.* (internal quotation marks omitted).

Here, the factual core of Plaintiff's Complaint concerns Defendants' alleged fraud in obtaining Plaintiff's investment and assent to the Partnership Agreement. The Supreme Court has repeatedly held that while a court may adjudicate a claim for fraudulent inducement of the arbitration clause itself, a claim of fraudulent inducement of the entire contract is to be decided by the arbitrator rather than the court. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404 (1967); *Buckeye Check Casliing, Inc.*, 546 U.S. at 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by

the arbitrator in the first instance."). Accordingly, Plaintiff's challenges to the validity of the Partnership Agreement must be arbitrated.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 31 and stay the case. The parties are directed to notify the Court in writing on or before July 16, 2018 of the status of the arbitration proceeding.

Dated: March 15, 2018  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge